BARRACK RODOS & BACINE
STEPHEN R. BASSER (121590)
SAMUEL M. WARD (216562)
One America Plaza
600 West Broadway, Suite 900
San Diego, CA  92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
E-mail: sbasser@barrack.com
        sward@barrack.com


Attorneys for Plaintiff
[Additional counsel on signature page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| AUTUMN ELLISON, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR:** |
| v. | (1) NEGLIGENT MISREPRESENTATION; |
| Plum, PBC, and Plum, Inc., Delaware corporations, | (2) VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT; (3) VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW; |
| Defendants. | (4) VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW; (5) BREACH OF EXPRESS WARRANTY; (6) BREACH OF IMPLIED WARRANTY; (7) UNJUST ENRICHMENT; (8) FRAUDULENT MISREPRESENTATION; AND (9) FRAUD BY OMISSION. |
| | **DEMAND FOR JURY TRIAL** |

1.     Plaintiff Autumn Ellison, ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, brings this Class Action Complaint against Defendant Plum, PBC and Defendant Plum, Inc. (collectively "Defendants"), for their negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose in their packaging, advertising, and statements the presence of arsenic, cadmium, lead, or mercury (collectively "Heavy Metals") and/or perchlorate, or other undesirable toxins or contaminants existing in their baby food products sold throughout Oregon and the United States.  Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Class (as defined herein), including requiring full disclosure of all such substances in their marketing, advertising, and packaging and restoring monies to the members of the proposed Class.  Plaintiff alleges the following based upon personal knowledge as well as investigation by their counsel, and as to all other matters, upon information and belief (Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery).

## NATURE OF THE ACTION

2.     Parents like Plaintiff trust manufacturers like Defendants to sell baby food that is healthy, nutritious, and free from harmful toxins, contaminants, and chemicals. They certainly expect the food they feed their infants and toddlers to be free from Heavy Metals or perchlorate, substances known to have significant and dangerous health consequences.

3.     Consumers lack the scientific knowledge necessary to determine whether the Defendants' products do in fact contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants, or to ascertain the true nature of the ingredients and quality of the products. Reasonable consumers therefore must and do rely on Defendants to honestly report what their products contain.

4.     Defendants manufacture, market, advertise, label, distribute, and sell baby food products under the brand name Plum Organics throughout the United States, including both the State of Oregon and in this District.

- 1 -
CLASS ACTION COMPLAINT

5.      Defendants state they use "organic, non-GMO, whole and simple ingredients" and their products are "always made without genetically modified ingredients."[1]  Defendants state that their mission is "to nourish little ones with the very best food from the very first bite."[2]

6.      Defendants' packaging, marketing, and advertising emphasize the inclusion of quality and safe ingredients, their commitment to organic food, the absence of any unnatural ingredients, and the safety of their products for human infant consumption.  Yet nowhere do Defendants disclose that the Baby Foods[3] include Heavy Metals, perchlorate, or other ingredients that do not conform to the labels, packaging, advertising, and statements.

7.      Indeed, the Baby Foods have been shown to contain significant levels of arsenic, cadmium, lead, mercury, and/or perchlorate - all known to pose health risks to humans, and particularly to infants.[4]

8.      Despite this, Defendants warrant, promise, represent, mislead, market, and/or advertise that the Baby Foods are free of any Heavy Metals, perchlorate, and/or unnatural ingredients by making assurances that the foods are high quality and safe for infant consumption.

---

[1] https://www.plumorganics.com/food-philosophy/ (last accessed March 9, 2021).

[2] https://www.plumorganics.com/faqs/ (last accessed March 10, 2021).

[3] The phrase "Baby Foods" collectively refers to the following Plum Organics products: Just Sweet Potato Organic Baby Food; Just Peaches Organic Baby Food; Just Prunes Organic Baby Food; Apple & Carrot Organic Baby Food; Apple, Raisin, & Quinoa Organic Baby Food; Pumpkin, Banana, Papaya, & Cardamom Organic Baby Food; Pear, Purple Carrot, & Blueberry Organic Baby Food; Pear, Spinach, & Pea Organic Baby Food; Mighty 4 Blends- Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet Tots Pouch and Banana, Kiwi, Spinach, Greek Yogurt & Barley Tots Pouch; Little Teethers Organic Multigrain Teething Wafers- Banana with Pumpkin and Blueberry; Mighty Morning Bar- Blueberry Lemon and Apple Cinnamon; Butternut Squash, Carrot, Chickpea & Corn Organic Baby Food; Apple with Spinach Super Puffs; Mango with Sweet Potato Super Puffs; Mighty Snack Bars- Blueberry and Strawberry; Teensy Snacks- Berry. Discovery may reveal additional products that also contain levels of Heavy Metals, perchlorate, or other undesirable toxins or contaminants.  Plaintiff reserves the right to include any such products in this action.

[4] See Healthy Babies Bright Futures' report: What's in My Baby's Food? https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (last accessed March 10, 2021); Table 1.

CLASS ACTION COMPLAINT

9.      Defendants claim they place the safety of their customers above all else, and that their Baby Foods are organic, in direct contradiction to the true nature of their contents, which include Heavy Metals, perchlorate, or other undesirable toxins or contaminants.[5]

10.     It was recently revealed on information and belief that Defendants were knowingly, recklessly, and/or negligently selling the Baby Foods that contain arsenic, cadmium, lead, mercury, and/or perchlorate.

11.     A recent report by the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform reveals that parents' trust has been violated. Ex. 1. The Subcommittee's investigation of the seven largest baby food manufacturers in the United States, including Defendants, was spurred by "reports alleging high levels of toxic heavy metals in baby foods" and the knowledge that "[e]ven low levels of exposure can cause serious and often irreversible damage to brain development." Ex. 1 at 2.

12.     The Subcommittee's report revealed that "[i]nternal company standards permit dangerously high levels of toxic heavy metals, and … that the manufacturers have often sold foods that exceeded these levels." Ex. 1 at 4. "[E]ven limited independent testing has revealed the presence of toxic heavy metals in [Defendants'] baby food." Ex. 1 at 45.

13.     Defendants know their customers trust the quality of their products and that they expect Defendants' products to be free of Heavy Metals, perchlorate, and other undesirable toxins or contaminants. They also know that certain consumers seek out and wish to purchase premium baby foods that possess high quality ingredients free of toxins, contaminants, or chemicals and that these consumers will pay more for baby foods they believe possess these qualities than for baby foods they do not believe possess these qualities.

14.     As such, Defendants' promises, warranties, pricing, statements, claims, packaging, labeling, marketing, and advertising (hereinafter collectively referred to as "Marketing" or "Claims") center on representations and pictures that are intended to, and do, convey to consumers

---

[5] https://www.plumorganics.com/faqs/ (last accessed March 9, 2021).

CLASS ACTION COMPLAINT

1  that their baby food, including their Baby Foods, possess certain qualities and characteristics that

2  justify a premium price.

3      15.    No reasonable consumer seeing Defendants' Marketing would expect the Baby

4  Foods to contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

5  Furthermore, reasonable consumers, like Plaintiff, would consider the mere inclusion of Heavy

6  Metals, perchlorate, or other undesirable toxins or contaminants a material fact when considering

7  what baby food to purchase.

8      16.    Defendants intended for consumers to rely on their Marketing, and reasonable

9  consumers did in fact so rely. However, Defendants' Marketing is deceptive, misleading, unfair,

10  and/or false because, among other things, the Baby Foods include undisclosed levels of Heavy

11  Metals, perchlorate, or other undesirable toxins or contaminants.

12      17.    Defendants' Baby Foods do not have a disclaimer regarding the presence of Heavy

13  Metals, perchlorate, or other undesirable toxins or contaminants that would inform consumers that

14  the foods contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants and/or

15  that Heavy Metals, perchlorate, or other undesirable toxins or contaminants can accumulate over

16  time in a child's body to the point where poisoning, injury, and/or disease can occur.

17      18.    Defendants' wrongful Marketing, which includes misleading, deceptive, unfair,

18  and false Marketing and omissions, allowed them to capitalize on, and reap enormous profits from,

19  consumers who paid the purchase price or a price premium for Baby Foods that were not sold as

20  advertised.  Defendants continue to wrongfully induce consumers to purchase their Baby Foods

21  that are not as advertised.

22      19.    Plaintiff brings this proposed consumer class action individually and on behalf of

23  all other members of the Nationwide Class and Oregon Class (as defined herein), who, from the

24  applicable limitations period up to and including the present, purchased for use and not resale any

25  of Defendants' Baby Foods.

26                    **JURISDICTION AND VENUE**

27      20.    This Court has original jurisdiction over all causes of action asserted herein under

28  the Class Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum

CLASS ACTION COMPLAINT

1   or value or $5,000,000 exclusive of interest and costs and more than two-thirds of the Class resides

2   in states other than the state in which Defendants are citizens and in which this case is filed, and

3   therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d)(2) do not apply.

4       21.    Venue is proper in this Court pursuant to 28 U.S.C. §1391, because  many of the

5   acts and transactions giving rise to this action occurred in this district, and Defendants conduct

6   substantial business in this district and are headquartered in this district.  Defendants have

7   intentionally availed themselves of the laws and markets of this district, and Defendants are subject

8   to personal jurisdiction in this district.

9                                    **THE PARTIES**

10      22.    Plaintiff Autumn Ellison ("Plaintiff Ellison") is, and at all times relevant hereto has

11  been, a citizen of the state of Oregon.  She purchased the Baby Foods, specifically the Plum

12  Organics Peach Banana & Apricot and Plum Organic Pear Purple Carrot and Blueberry for her

13  minor child from December 2020 to February 2021.

14      23.    Plaintiff Ellison believed she was feeding her minor child healthy, nutritious food.

15  Prior to purchasing the Baby Foods and was aware of and relied upon the nutritional claims on the

16  packaging, including "organic" representations, when deciding to purchase the Baby Foods.

17  During the time she purchased and fed her minor child the Baby Foods, and due to the false and

18  misleading claims and omissions by Defendants, she was unaware the Baby Foods contained or

19  may contain any level of Heavy Metals, perchlorate, or other undesirable toxins or contaminants,

20  and would not have purchased the food if that information had been fully disclosed.

21      24.    As the result of Defendants' negligent, reckless, and/or knowingly deceptive

22  conduct as alleged herein, Plaintiff was injured when she paid the purchase price or a price

23  premium for the Baby Foods that did not deliver what they promised.  Plaintiff paid the purchase

24  price on the assumption that the labeling of the Baby Foods was accurate and that they was free of

25  Heavy Metals, perchlorate, or other undesirable toxins or contaminants, and was safe to ingest.

26  Plaintiff would not have paid this money had she known that the Baby Foods contained or may

27  contain any level of Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

28  Further, should Plaintiff encounter the Baby Foods in the future, she could not rely on the

1  truthfulness of the Marketing, absent corrective changes to the packaging and advertising of the

2  Baby Foods. Damages can be calculated through expert testimony at trial.

3      25.    Defendant Plum, PBC was founded in 2007 and is incorporated in Delaware. Its

4  headquarters are located at 1485 Park Avenue, Suite 200, Emeryville, California. Defendant Plum,

5  PBC Terms of Use as being "governed by and construed in accordance with the laws of the State

6  of California," and states exclusive jurisdiction and venue is in Alameda County.[6]  Additionally,

7  under "How to Contact Us," Defendant Plum, PBC lists its address at 1485 Park Avenue, Suite

8  200, in Emeryville, California.[7]

9      26.    Defendant Plum, Inc. (doing business as "Plum Organics") is incorporated in

10  Delaware with its headquarters and principal place of business located at 1485 Park Avenue,

11  Emeryville, California.

12      27.    Defendants formulate, develop, manufacture, distribute, market, advertise, and sell

13  the Baby Foods under the Plum Organics name throughout the United States, including in Oregon

14  and this District, during the Class Period (defined below). Defendants created, allowed, negligently

15  oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive

16  promotion and advertising for the Baby Foods.  Defendants are also responsible for sourcing

17  ingredients, manufacturing the products, and conducting all relevant quality assurance protocols,

18  including testing of the ingredients and finished baby foods.

19      28.    The Marketing for the Baby Foods, relied upon by Plaintiff, was prepared,

20  reviewed, and/or approved by Defendants and their agents at their headquarters in California and

21  was disseminated by Defendants and their agents through marketing, advertising, packaging, and

22  promotion that contained the misrepresentations alleged herein.  The Marketing for the Baby

23  Foods was designed to encourage consumers to purchase the Baby Foods and reasonably misled

24  the reasonable consumer, *i.e.*, Plaintiff and the Class members, into purchasing the Baby Foods.

25

26  _____

27  [6] https://www.plumorganics.com/terms-of-use/ (last accessed March 10, 2021).

28  [7] *Id.*

- 6 -

1

29.     Defendants' Products are divided into groups according to the targeted infant or

2
toddler age and/or type of food product.  For example, there are five groups designated for the

3
youngest infants: Stage 1 (4+ months old), Stage 2 (6+ months old), Stage 3 (6+ months old),

4
Super Puffs®, and Little Teethers.

5

6
### Stage 1

7

8
Stage 1 (4+ months) organic baby food is
perfect for introducing solids or first foods
to your budding eater. Using only non-
GMO, organic ingredients, the blends are
all unsalted, unsweetened, and kosher
parve. And since our pouches are
resealable, you can customize portion
sizes that are perfect for your baby.

9

10

11

12

   

Peaches Baby Food     Sweet Potato Baby     Mangos Baby Food     Prunes Baby Food
                            Food

13

14
### Stage 2

15

16
Stage 2 (6+ months) organic baby food
pouches are made with blends of fruit,
veggies, grains, and Greek yogurt that
are perfect for exposing your little foodie
to unique flavors and colors.

17

18

   

Apple, Butternut     Pear, Blueberry,     Strawberry, Banana     Mango, Carrot &
Squash & Granola,    Avocado & Granola    & Granola 3.5oz        Coconut Cream
3.5oz                Baby Food                                   Baby Food

SHOW MORE   >

19

20
### Stage 3

21

22
Stage 3 (6+ months), a line of culinary-
inspired baby meals, are perfect for
budding foodies. These hearty, flavorful
meals are cooked to delight & develop
baby's palate while helping to transition
baby to table food.

23

24

  

Carrot, Spinach,     Carrot, Sweet        Carrot, Chickpea,
Turkey, Corn, Apple  Potato, Corn, Pea &  Pea, Beef & Tomato
& Potato Baby Food   Chicken Baby Food    Baby Food

25

26

27

28

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Super Puffs®

Super Puffs®, a colorful line of bite-sized, nutritious puffed snacks, are made with whole grains and organic veggies and fruit. Packed with 7 essential vitamins and

   

Mango with Sweet Potato Cereal Snack

## Little Teethers

Little ones can't wait to sink their gums into these delicious teething wafers. Delight budding palates with unique flavors as you encourage self-feeding.

  

Apple with Leafy Greens Wafers

Banana with Pumpkin Wafers

Blueberry Wafers

30.    The Baby Foods, at a minimum, include:

a)  Just Sweet Potato Organic Baby Food:



b)  Just Peaches Organic Baby Food:



CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

c)   Just Prunes Organic Baby Food:



d)   Apple & Carrot Organic Baby Food:



e)   Pear, Purple Carrot, & Blueberry Organic Baby Food:



CLASS ACTION COMPLAINT

1

f)   Pear, Spinach, & Pea Organic Baby Food:

2

3

4



5

6

7

8

9

10

g)   Butternut Squash, Carrot, Chickpea & Corn Organic Baby Food:

11

12

13



14

15

16

17

18

19

h)   Pumpkin, Banana, Papaya, and Cardamom Organic Baby Food:

20

21

22



23

24

25

26

27

28

**CLASS ACTION COMPLAINT**

1

i)   Apple, Raisin, & Quinoa Organic Baby Food:

2

3

4



5

6

7

8

9

10

j)   Little Teethers Organic Multigrain Teething Wafers- Banana with Pumpkin:

11

12

13



14

15

16

17

18

k)   Little Teethers Organic Multigrain Teething Wafers- Blueberry

19

20

21



22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

l)   Mighty Morning Bar- Blueberry Lemon



m)  Mighty Morning Bar- Apple Cinnamon



n)   Mighty Snack Bar- Blueberry:



CLASS ACTION COMPLAINT

1

o)  Mighty Snack Bar- Strawberry:

2

3



4

5

6

7

8

9   p)  Mighty 4 Blends- Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt &

10      Millet Tots Pouch:

11

12



13

14

15

16

17

18   q)  Mighty 4 Blends- Banana, Kiwi, Spinach, Greek Yogurt & Barley Tots Pouch:

19

20



21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

r)   Super Puffs- Apple with Spinach:



s)   Super Puffs- Mango with Sweet Potato:



t)   Teensy Snacks- Berry



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# FACTUAL ALLEGATIONS

**I.    A Congressional Investigation Found the Presence of Heavy Metals in Baby Foods**

31.    On February 4, 2021, the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, published a report detailing its findings that Heavy Metals—including arsenic, cadmium, lead, and mercury—were present in "significant levels" in numerous commercial baby food products. Ex. 1.

32.    Plum was one of the baby food manufacturers from whom the Subcommittee requested internal documents and test results, but "refused to cooperate with the Subcommittee's investigation," and refused to produce its testing standards and specific test results but instead produced a spreadsheet that "self-declared" that every product met criteria for each of the Heavy Metals, while declining to state what the criteria were. Ex. 1.

| Product Name | Testing Date | Arsenic | Cadmium | Lead | Mercury |
|---|---|---|---|---|---|
| Plum Organics® Stage 2 Apple & Carrot, 4oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Peach, Banana & Apricot, 4oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pear & Mango, 4oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pear, Spinach & Pea, 4oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Apple, Cauliflower & Leek, 4oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Cherry, Purple Carrot, Blackberry & Millet, 3.5oz | 5/14/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Cherry, Purple Carrot, Blackberry & Millet, 3.5oz | 5/14/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Yellow Zucchini, Corn & Turmeric, 3.5oz | 5/1/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Yellow Zucchini, Corn & Turmeric, 3.5oz | 5/2/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Yellow Zucchini, Corn & Turmeric, 3.5oz | 5/7/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Yellow Zucchini, Corn & Turmeric, 3.5oz | 5/16/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Peach, Pumpkin, Carrot & Cinnamon, 3.5oz | 5/17/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Peach, Pumpkin, Carrot & Cinnamon, 3.5oz | 5/17/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Peach, Pumpkin, Carrot & Cinnamon, 3.5oz | 5/25/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pea, Kiwi, Pear & Avocado, 3.5oz | 5/1/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pea, Kiwi, Pear & Avocado, 3.5oz | 5/2/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pea, Kiwi, Pear & Avocado, 3.5oz | 6/27/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Strawberry, Apple, Rhubarb & Oats, 3.5oz | 5/16/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Strawberry, Apple, Rhubarb & Oats, 3.5oz | 5/24/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Strawberry, Apple, Rhubarb & Oats, 3.5oz | 5/24/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Apple, Raisin & Quinoa, 3.5oz | 10/28/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Apple, Plum, Berry & Barley, 3.5oz | 5/15/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Sweet Potato, Apple & Millet, 3.5oz | 5/15/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Sweet Potato, Apple & Millet, 3.5oz | 6/27/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Banana, Zucchini & Amaranth, 3.5oz | 5/23/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Banana, Zucchini & Amaranth, 3.5oz | 5/23/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |

33.    Defendants described every product listed as "meets criteria" without identifying what that criteria is. Ex. 1.  The Subcommittee found Defendants' "grading" concerning and misleading as it "raises questions about what [Defendants'] other thresholds actually are, and whether they exist." Ex. 1.

CLASS ACTION COMPLAINT

34. The investigation found that, when baby food manufacturers were left to self-regulate and establish their own Heavy Metals standards, they routinely failed to abide by their own standards. Ex. 1.

35. In its conclusion, the Subcommittee stressed the danger associated with the presence of Heavy Metals in baby food: "These toxic heavy metals pose serious health risks to babies and toddlers. Manufacturers knowingly sell these products to unsuspecting parents, in spite of internal company standards and test results, and without any warning labeling whatsoever." Ex. 1.

36. In Defendants' published response to the Subcommittee's Report, they stated, "We are confident in the safety and quality of our products. Our top priority is to serve children healthy, nutritious food made from the best ingredients. We want to assure you that Plum's products are safe (and delicious) to eat!"[8]

37. However, under the FAQs section, Defendants fail to describe their "protocol for evaluating heavy metals in products" and simply claims they look to guidance from leading health and regulatory bodies, while also failing to identify the "healthy and regulatory bodies."[9]

II. **Defendants Falsely Marketed Their Baby Foods as Healthy While Omitting Any Mention of Heavy Metals**

38. Defendants package, label, market, advertise, formulate, manufacture, distribute, and sell their Baby Foods throughout the United States, including California.

39. Defendants' advertised mission is to "nourish little ones with the very best food from the very first bite."[10] Defendants repeatedly tout their commitment to and use of organic and non-GMO ingredients in their products, including the Baby Foods.[11]

---

[8] https://www.plumorganics.com/faqs/ (last accessed March 9, 2021).

[9] *Id.*

[10] Plum Organics Mission Highlights, Fiscal Year 2018. Available at https://www.plumorganics.com/wp-content/uploads/2019/05/Plum_MissionReport2018.pdf (last accessed March 9, 2021).

[11] https://www.plumorganics.com/food-philosophy/ (last accessed March 10, 2021).




40.     Defendants also claim their "top priority" is "to serve children healthy, nutritious food made from the best ingredients."[12]

41.     Defendants tout their commitment to organic, healthy food, the "very best food."[13]

---

[12] https://www.plumorganics.com/faqs/ (last accessed March 9, 2021).

[13] Plum Organics Mission Highlights, Fiscal Year 2018. Available at https://www.plumorganics.com/wp-content/uploads/2019/05/Plum_MissionReport2018.pdf (last accessed March 9, 2021).

42.     Defendants even state, "Our recipes always begin with organic, non-GMO ingredients from real foods like fruits, vegetables, whole grains, and proteins."[14]

43.     Defendants also promote their Baby Foods as organic and free from unnatural ingredients in order to place their products within the premium category of baby food.

44.     Defendants also claim to have a "comprehensive quality and food safety program" where they "go beyond standard regulatory compliance to ensure integrity of our products," which includes "strict ingredient requirements" and "regular supplier audits."[15]

45.     Based on Defendants' decision to advertise, label, and market their Baby Foods as healthy, nutritious, organic, "made from the best ingredients," safe for consumption, and including "only" the healthy fruits, vegetables, or grains pictured on the label, they had a duty to ensure that these statements and the message portrayed by the labels' imagery were true and not misleading. As such, Defendants knew or should have known the Baby Foods included nondisclosed levels of Heavy Metals, perchlorate, or other undesirable toxins or contaminants and that these toxins can accumulate over time.

46.     The Baby Foods are available at numerous retail and online outlets. The Baby Foods are widely advertised, and Defendants include a Vice President of Brand and Marketing on their Executive Team.

47.     As discussed above, the Marketing of the Baby Foods also fails to disclose they contain or may contain any level of Heavy Metals, perchlorate, or other undesirable toxins or contaminants. Defendants intentionally omitted these contaminants in order to induce and mislead reasonable consumers to purchase their Baby Foods.

48.     As a result of Defendants' omissions, a reasonable consumer would have no reason to suspect the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods without conducting his or her own scientific tests or reviewing third party scientific testing of these products.

---

[14]    https://web.archive.org/web/20200922014219/https://www.plumorganics.com/ingredients-glossary/ (last accessed March 10, 2021).

[15]    *Id.*

III.   **Due to the Presence of Heavy Metals and/or Perchlorate in the Baby Foods, Defendants' Marketing and Omissions are Misleading**

A.   **Heavy Metals**

49.   At all times during the Class Period, Defendants knew or should have known the Baby Foods contained or may contain Heavy Metals and were not sufficiently tested for the presence of Heavy Metals.

50.   Defendants' Baby Foods contained or may contain Heavy Metals due to Defendants' failure to monitor for their presence in the ingredients and finished products. Defendants were aware of this risk and failed to disclose it to Plaintiff and the Class.

51.   Defendants knew that Heavy Metals are a potentially dangerous contaminant that poses health risks to infants and children. Defendants knew or should have known the standards for the presence of Heavy Metals in baby food have become increasingly stringent in recent years.

52.   Defendants knew or should have known that they owed consumers a duty of care to prevent, or at the very least, minimize the presence of Heavy Metals in the Baby Foods to the extent reasonably possible.

53.   Defendants knew or should have known they owed consumers a duty of care to adequately test for Heavy Metals in the Baby Foods.

54.   Defendants knew consumers purchased the Baby Foods based on the reasonable expectation that Defendants manufactured the Baby Foods to the highest standards. Based on this expectation, Defendants knew or should have known consumers reasonably inferred that Defendants would hold the Baby Foods to the highest standards for preventing the inclusion of Heavy Metals in the Baby Foods and for the Heavy Metals testing of the ingredients in the Baby Foods as well as the final product.

55.   A recent Congressional report from the Subcommittee on Economic and Consumer Policy found that many of the products produced by the country's largest commercial baby food manufacturers "contain significant levels of toxic heavy metals, including arsenic, lead, cadmium and mercury, which can endanger infant neurological development."[16]

---

[16] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at

**CLASS ACTION COMPLAINT**

56.     The Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects." Ex. 1 at 2.

57.     Arsenic, lead, mercury, and cadmium- four heavy metals found in the Baby Foods- are neurotoxins, or poisons which affect the nervous system. Exposures to these four heavy metals "diminish quality of life, reduce academic achievement, and disturb behavior, with profound consequences for the welfare and productivity of entire societies."[17]

58.     The four heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)."[18] Even in trace amounts found in food, these heavy metals can alter the developing brain and erode a child's intelligence quotient ("IQ"). Ex. 1 at 1.

59.     Research continues to confirm that exposures to food containing arsenic, lead, mercury, and cadmium causes "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]"[19]

***Arsenic***

60.     The Baby Foods may contain arsenic, which when children are exposed to it early in life, causes "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."[20] "There is no evidence

---

https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed Feb. 10, 2021).

[17]  Healthy Babies Bright Futures report, What's in My Baby's Food, https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf at 13 (last accessed March 10, 2021).

[18] *Id*. at 6.

[19] *Id*. at 1.

[20] *Id*. at 3.

CLASS ACTION COMPLAINT

1    that the harm caused by arsenic is reversible."[21] Inorganic arsenic is highly toxic and a known

2    cause of human cancers.   Arsenic exposure can also cause respiratory, gastrointestinal,

3    hematological, hepatic, renal, skin, neurological and immunological effects, and damage

4    children's central nervous systems and cognitive development.[22]

5          61.    Based on the risks associated with exposure to higher levels of arsenic, both the

6    U.S. Environmental Protection Agency ("EPA") and U.S. Food and Drug Administration ("FDA")

7    have set limits concerning the allowable limit of arsenic at 10 parts per billion ("ppb") for human

8    consumption in apple juice (regulated by the FDA) and drinking water (regulating by the EPA as

9    a maximum contaminant level).

10          62.    Moreover, the FDA has set the maximum allowable arsenic levels in bottled water

11    at 10 ppb of inorganic arsenic.[23]  The FDA is also considering limiting the action level for arsenic

12    in infant rice cereals to 100 ppb.[24]

13          63.    Again, Defendants did not cooperate with the Subcommittee's investigation and

14    refused to produce their testing standards and specific test results.  Ex. 1 at 2.  Defendants instead

---

19    [21] *Id.*

20    [22] U.S.  House of Representatives Staff Report by the Subcommittee on Economic and Consumer
21    Policy, Committee on Oversight and Reform: "Baby foods are tainted with dangerous levels or
      arsenic,     lead,     cadmium,     and     mercury."     Available     at
22    https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-
      04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed February 4, 2021).
23

24    [23] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to
      Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at
25    https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed
      Feb. 10, 2021).

26
27    [24] FDA, Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level
      (Apr.  2016),  https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocuments
28    RegulatoryInformation/UCM493152.pdf (last accessed Feb. 10, 2021).

1   produced a spreadsheet that "self-declared" that every product met criteria for each of the Heavy

2   Metals, while declining to state what the criteria were.[25]

3   ***Cadmium***

4   64.    The Baby Foods may also contain cadmium, which has been shown to cause

5   anemia, liver disease, and nerve or brain damage in animals that eat or drink it.

6   65.    Cadmium is linked to neurotoxicity, cancer, and kidney, bone, and heart damage.

7   Scientists have reported a "tripling of risk for learning disabilities and special education among

8   children with higher cadmium exposures, at levels common among U.S. children[.]"[26] Cadmium,

9   like lead, "displays a troubling ability to cause harm at low levels of exposure."[27] The U.S.

10  Department of Health and Human Services has determined that cadmium and cadmium

11  compounds are known human carcinogens and the EPA has likewise determined that cadmium is

12  a probable human carcinogen.[28]

13  66.    The EPA has set a maximum contaminant level for cadmium in drinking water of

14  5 ppb, 40 C.F.R. § 141.62; the FDA has set a maximum level in bottled water to 5 ppb, and the

15  WHO set a maximum cadmium level in drinking water to 3 ppb. Ex. 1 at 29.

16

17

18

19

20

21

_____

22  [25]   Campbell, *Product Heavy Metal Test Results* (Dec. 11, 2019) (online at
    https://oversight.house.gov/sites/democrats.oversight.house.gov/files/12.pdf) (last accessed Feb.
23  10, 2021).

24  [26]   Healthy   Babies   Bright   Futures   report,   What's   in   My   Baby's   Food,
    https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-
25  04/BabyFoodReport_ENGLISH_R6.pdf at 14 (last accessed March 10, 2021).

26  [27] *Id.*

27  [28]   ATSDR,   Public   Health   Statement:   Cadmium   (Sept.   2012),
    https://www.atsdr.cdc.gov/phs/phs.asp?id=46&tid=15 (last accessed Feb. 10, 2021).
28

CLASS ACTION COMPLAINT

67.     Despite Defendants' assertion that all of their Baby Foods met criteria for each of the Heavy Metals, reports indicate that Defendants sold products containing levels as high as 6.3 ppb cadmium.[29]

***Lead***

68.     The Baby Foods may also contain lead, which is another carcinogen and developmental toxin known to cause health problems in children.

69.     Lead exposure can seriously harm the brain and nervous systems in children and is associated with a range of negative health outcomes such as behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth.

70.     Exposure to lead in foods builds up over time.  Build up can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

71.     Even very low exposure levels to lead "cause lower academic achievement, attention deficits and behavior problems. No safe level of exposure has been identified."[30]

72.     One study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food.[31]  Additionally, studies have established a link between lead exposure and ADHD. Ex. 1 at 12.

73.     Although there is no federal standard for lead in baby food, health experts, including the American Academy for Pediatrics, the Environmental Defense Fund, and Consumer

[29]    Healthy Babies Bright Futures report, What's in My Baby's Food, https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf at 27 (last accessed March 10, 2021).

[30]  *Id*. at 13.

[31]  *Id*. at 7.

CLASS ACTION COMPLAINT

Reports, have agreed that lead in baby foods should not exceed 1 ppb.[32] "The European Union has set the maximum lead level in infant formula to 20 ppb."[33]

74.     On January 15, 2021, the EPA issued Lead and Copper Rule Revisions, with a new "trigger level" for treatment of 10 ppb lead in drinking water, effective March 16, 2021. 86 F.R. 28691 (Jan. 15, 2021). Previously, the EPA had required treatment for water exceeding lead concentrations of 15 ppb. 40 C.F.R. 141, Subpart I.

75.     Again, Defendants did not cooperate with the Subcommittee's investigation and instead produced a spreadsheet that "self-declared" that every product met criteria for each of the Heavy Metals, while declining to state what the criteria were.[34]

76.     Other reports, however, indicate Defendants sold products containing levels as high as 14 ppb lead.[35]

***Mercury***

77.     The Baby Foods may also contain mercury, which increases the risk for cardiovascular disease and can cause vision, intelligence, and memory problems for children exposed in utero. Exposure to mercury has been linked to higher risk of lower IQ scores and intellectual disability.[36] Mercury exposure at two and three years of age has been positively associated with autistic behaviors among pre-school age children. Ex. 1 at 12-13.

---

[32] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed Feb. 10, 2021).

[33] *Id*.

[34] Campbell, *Product Heavy Metal Test Results* (Dec. 11, 2019) (online at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/12.pdf) (last accessed Feb. 10, 2021).

[35] Healthy Babies Bright Futures report, What's in My Baby's Food, https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf at 22 (last accessed March 10, 2021).

[36] *Id*. at 14.

CLASS ACTION COMPLAINT

78.     The EPA has set a maximum contaminant level for mercury in drinking water at 2 ppb.  Ex. 1 at 32.

79.     While federal regulations regarding levels of Heavy Metals in most baby foods are non-existent, it is not due to a lack of risk. According to Linda McCauley, Dean of the Nell Hodgson Woodruff School of Nursing at Emory University, who studies environmental health effects, stated, "No level of exposure to these [heavy] metals has been shown to be safe in vulnerable infants."[37]

80.     Indeed, the FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals.[38]

81.     Despite the known risks of exposure to these heavy metals, Defendants have negligently, recklessly, and/or knowingly sold the Baby Foods without disclosing they may contain levels of arsenic, mercury, cadmium and lead to consumers like Plaintiff.

**B.     Perchlorate**

82.     The Baby Foods may contain perchlorate, a neurotoxic chemical compound. Perchlorate can disrupt the function of the thyroid, which is crucial for normal growth and development of the central nervous system in infants and young children.[39]  It has also been "linked to IQ loss among children born to mothers with thyroid dysfunction."[40]

---

[37]   https://www.nytimes.com/2021/02/04/health/baby-food-metals-arsenic.html  (last accessed February 5, 2021).

[38]   FDA, Metals,  https://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/default.htm (last accessed Feb. 10, 2021).

[39]   https://www.fda.gov/food/chemicals/perchlorate-questions-and-answers (last accessed March 9, 2021).

[40]   Healthy  Babies  Bright  Futures  report,  What's  in  My  Baby's  Food, https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf at 8 (last accessed March 10, 2021).

CLASS ACTION COMPLAINT

83.     The levels of perchlorate in children's food has increased significantly from 2005. Perchlorate, which is both a naturally occurring and manmade chemical, was approved by the FDA in 2005 for use as an antistatic in plastic food packaging. In 2016, the FDA expanded the approval to cover dry food handling equipment. Hypochlorite bleach, which is used to disinfect food processing equipment, can also create perchlorate as a product of degradation.

84.     The dangers of perchlorate in human food are recognized by the FDA.[41] The EPA has also recognized the dangers of perchlorate in drinking water and has set the maximum contaminant level goal for perchlorate in drinking water of 56 μg/L. 85 F.R. 43990 (July 21, 2020).

85.     At all times during the Class Period, Defendants knew or should have known the Baby Foods contained or may contain perchlorate, and/or were not sufficiently tested for perchlorate. During this time, Defendants omitted any reference to the presence or risk of perchlorate from the Baby Foods' packaging.

86.     Defendants knew or should have known that perchlorate is a potentially dangerous contaminant that poses health risks to infants and children.

87.     Defendants knew or should have known they owed consumers a duty of care to prevent, or at the very least, minimize, the presence of perchlorate in the Baby Foods.

88.     Defendants knew or should have known they owed consumers a duty of care to adequately test for perchlorate in the Baby Foods.

89.     Defendants knew consumers purchased the Baby Foods based on the reasonable expectation that Defendants manufactured the Baby Foods to the highest standards to be safe and healthy for consumption by infants and children. Defendants knew or should have known consumers reasonably inferred that they would hold the Baby Foods to the highest standards for preventing the presence or risk of perchlorate and for testing for perchlorate.

---

[41]    FDA, Exploratory Survey Data on Perchlorate in Food 2004-2005, https://www.fda.gov/food/chemicals/exploratory-survey-data-perchlorate-food-2004-2005 (last accessed Feb. 10, 2021). ("Human exposure to sufficient doses of perchlorate can interfere with iodide uptake into the thyroid gland, disrupting its functions and potentially leading to a reduction in the production of thyroid hormones.").

CLASS ACTION COMPLAINT

90.     Still, certain Baby Foods are sold by Defendants that may contain levels of perchlorate.

91.     Despite the risk and/or actual presence of these unnatural and potentially harmful chemicals, Defendants prominently warrant, claim, feature, represent, advertise, or otherwise market the Baby Foods as "organic" and appropriate for consumption by infants and fail to disclose the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

**IV.     Defendants' Marketing Misled and Deceived Consumers**

92.     Defendants' Marketing wrongfully conveys to consumers that their Baby Foods have certain superior quality and characteristics that they do not actually possess.

93.     For instance, although Defendants misleadingly cause consumers to believe their Baby Foods do not contain Heavy Metals through their Marketing and omissions, the Baby Foods do in fact contain undisclosed Heavy Metals, which is material information to reasonable consumers.

94.     For example, the following foods were tested and found to contain undisclosed Heavy Metals at the following levels:[42]

| Food | Arsenic (total, ppb) | Arsenic (inorganic, ppb) | Lead (ppb) | Cadmium (ppb) | Mercury (total, ppb) | Perchlorate (ppb) |
|---|---|---|---|---|---|---|
| Plum Organics Gentle Organic Infant Formula with Iron, Milk-Based Powder- 0-12 months | 4.6 | --[43] | 4.7 | < 1.1 | < 0.278 | -- |

[42] The following chart represents the levels of Heavy Metals in Defendants' products included in the Healthy Babies Bright Futures Report, dated October 2019.     Available at: https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (last accessed February 4, 2021).

[43] "--" indicates that analysis was not performed by Healthy Babies Bright Futures.

| Food | Arsenic (total, ppb) | Arsenic (inorganic, ppb) | Lead (ppb) | Cadmium (ppb) | Mercury (total, ppb) | Perchlorate (ppb) |
|---|---|---|---|---|---|---|
| Plum Organics Just Sweet Potato Organic Baby Food- 1, 4 months | 3.1*[44] | -- | 5.6 | 2.3 | <0.142 | -- |
| Plum Organics Just Peaches Organic Baby Food (Stage 1) | 7.2 | -- | 0.9* | <0.5 | <0.139 | -- |
| Plum Organics Just Prunes Organic Baby Food- 1, 4 months & up | 7.6 | -- | 2.5 | <0.5 | 0.194* | -- |
| Plum Organics Pumpkin Banana Papaya Cardamom, 6 months & up | 2.4* | -- | 1.4* | 2.4 | <0.139 | -- |
| Plum Organics Apple, Raisin, & Quinoa Organic Baby Food- 2 | 5.6* | -- | 2.2 | 1.9 | 0.145* | -- |
| Plum Organics Little Teethers Organic Multigrain Teething Wafers- Banana with Pumpkin- Baby Crawler | 49.9 | -- | 1.4* | 6.3 | 0.726 | -- |
| Plum Organics Mighty Morning Bar- Blueberry Lemon- Tots, 15 months & up | 40[45] | 39 | 3.4 | 24.3 | <0.137 | 1.8(J) |

*Table 1.*

---

[44] An "*" indicates that test results were estimated, between the limit of detection and the limit of quantitation.

[45] "This value is the average of 3 tests of total arsenic (44, 37, and 39 ppb). The original homogenized bar was tested twice, and homogenate of a second, separate bar from the same box was tested once."

95.    In addition, based on information and belief, testing conducted by independent laboratories further confirmed the presence of undisclosed Heavy Metals in the Baby Foods.

96.    Defendants' Marketing wrongfully fails to disclose to consumers the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in their Baby Foods.

97.    Based on Defendants' Marketing, a reasonable consumer would not suspect the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants, nor would a reasonable consumer be able to detect the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods without conducting his or her own scientific tests or reviewing scientific testing conducted on the Products.

98.    Reasonable consumers must and do rely on Defendants to honestly report what their Baby Foods contain.

99.    In light of Defendants' Marketing, including their "comprehensive" quality controls, Defendants knew or should have known the Baby Foods contained or may contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

100.    Defendants had a duty to ensure the Baby Foods were as they were represented and not deceptively, misleadingly, unfairly, and falsely marketed.

101.    Pursuant to the foregoing, Defendants' Marketing is deceptive, misleading, unfair, and false to Plaintiff and other consumers, including under the consumer protection laws of California.

102.    Defendants acted negligently, recklessly, unfairly, and/or intentionally with their deceptive, misleading, unfair, and false Marketing and omissions.

103.    Defendants knew that properly and sufficiently monitoring for Heavy Metals, perchlorate, and other undesirable toxins or contaminants in their ingredients and Baby Foods was not only important, but critical.

104.    Additionally, Defendants knew or should have been aware that a consumer would be feeding the Baby Foods multiple times each day to his or her child, making it a primary source of food for the child.  This leads to repeated exposure of the Heavy Metals, perchlorate, or other undesirable toxins or contaminants to the child.

105.    Finally, Defendants knew or should have known they could control the levels of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods by properly monitoring their ingredients for Heavy Metals, perchlorate, or other undesirable toxins or contaminants and adjusting any formulation or diet to reduce ingredients that contained or may contain higher levels of Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

106.    Defendants' omissions are material, false, misleading, and reasonably likely to deceive the public.  This is true especially considering the long-standing campaign by Defendants to market the Baby Foods as healthy, nutritious, organic, and made from the best ingredients to induce consumers, such as Plaintiff, to purchase the products.

107.    Using such descriptions and promises makes Defendants' advertising campaign deceptive based on the presence or risk of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods.  Reasonable consumers, like Plaintiff, would consider the mere presence or risk of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods a material fact when considering what baby food to purchase.

108.    At all times during the Class Period, Defendants knew they were not sufficiently and consistently monitoring or testing the Baby Foods or their ingredients for Heavy Metals, perchlorate, or other undesirable toxins or contaminants.  Defendants knew their failure to properly and sufficiently test for Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods continued throughout the Class Period.

109.    Defendants knew, yet failed to disclose, their lack of regular testing, monitoring, and knowledge Baby Foods contained or may contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods and ingredients.

110.    Defendants' Marketing was misleading due to their failure to properly and sufficiently monitor for and to disclose the risk of the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods.

111.    Defendants knew or should have known the Baby Foods contained or may contain unmonitored levels of Heavy Metals, perchlorate, or other undesirable toxins or contaminants that were inconsistent with their Marketing.

112.    Defendants knew or should have known that consumers expected them to ensure the Baby Foods and ingredients were monitored and tested for Heavy Metals, perchlorate, or other undesirable toxins or contaminants to ensure compliance with their Marketing.

113.    Defendants knew or should have known consumers paid premium prices and expected Defendants to regularly test for Heavy Metals, perchlorate, or other undesirable toxins or contaminants and sufficiently monitor the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods and ingredients.

114.    Defendants' above-referenced statements, representations, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that the Baby Foods are healthy, nutritious, organic, and made from the best ingredients, are subject to stringent quality control, and are free of Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

115.    Moreover, reasonable consumers, such as Plaintiff and the Class members, would have no reason to doubt Defendants' statements regarding the quality of the Baby Foods. Defendants' nondisclosure and/or concealment of the Heavy Metals, perchlorate, or other undesirable toxins and contaminants in the Baby Foods, coupled with the misrepresentations alleged herein that were intended to and did, in fact, cause consumers like Plaintiff and the members of the Class, to purchase products they would not have if the true quality and ingredients were disclosed or would not have paid a premium price for such baby food.

116.    As a result of Defendants' wrongful Marketing, which includes misleading, deceptive, unfair, and false statements and omissions, Defendants have generated substantial sales of the Baby Foods, which allowed them to capitalize on, and reap enormous profits from, consumers who paid the purchase price or premium for the Baby Foods that were not as advertised.

117.    This is not surprising given that, for example, organic baby food was valued at were $1.9 billion in the U.S. in 2018 and is expected to reach $3.32 billion by 2024.[46]

---

[46]    https://www.businesswire.com/news/home/20200120005436/en/North-America-Organic-Baby-Food-Market-Expected-to-Reach-a-Value-of-3.32-Billion-by-2024-with-a-CAGR-of-9.6---ResearchAndMarkets.com (last accessed February 4, 2021).

118.    The incredible rise in consumer demand for organic baby food is "driven by the growing awareness among consumers to limit that baby's exposure to the harmful chemicals used in conventional food production and the awareness of the benefits of organic products."[47]

**DEFENDANTS' STATEMENTS AND OMISSIONS VIOLATE CALIFORNIA LAWS**

119.    California law is designed to ensure that a company's claims about its products are truthful and accurate.

120.    Defendants violated California law by negligently, recklessly, and/or intentionally incorrectly claiming that the Baby Foods are healthy, nutritious, organic, and "made from the best ingredients," and by not accurately detailing that the products contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

121.    Defendants' marketing and advertising campaign has been sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require Plaintiff to plead relying upon each advertised misrepresentation.

122.    Defendants have engaged in this long-term advertising campaign to convince potential customers that the Baby Foods were healthy, nutritious, organic, and "made from the best ingredients," and did not contain harmful ingredients, such as Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

**PLAINTIFF'S RELIANCE WAS REASONABLE AND FORESEEN BY DEFENDANTS**

123.    Plaintiff reasonably relied on Defendants' claims, warranties, representations, advertisements, and other marketing concerning the particular qualities and benefits of the Baby Foods.

124.    Plaintiff read and relied upon the labels and packaging of the Baby Foods when making her purchasing decisions. Had she known Defendants omitted the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants from their packaging, she would not have purchase it.

---

[47] https://www.mordorintelligence.com/industry-reports/organic-baby-food-market (last accessed February 4, 2021).

125.    A reasonable consumer would consider the labeling of a product when deciding whether to purchase. Here, Plaintiff relied on the specific statements and omissions on the Baby Foods' labeling that led her to believe it was healthy, nutritious, organic, and "made from the best ingredients," and free of Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

### DEFENDANTS' KNOWLEDGE AND NOTICE OF THEIR BREACHES OF THEIR EXPRESS AND IMPLIED WARRANTIES

126.    Defendants had sufficient notice of their breaches of express and implied warranties. Defendants have, and had, exclusive knowledge of the physical and chemical make-up of the Baby Foods. Defendants also had exclusive knowledge of their suppliers and whether any suppliers provided ingredients that contained or may contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

127.    Moreover, Defendants were put on notice by the Healthy Babies Bright Future Report about the inclusion of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods.[48]

128.    Defendants did not change their packaging or labels to include any disclaimer that the Baby Foods contained or may contain any levels of Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

### PRIVITY EXISTS WITH PLAINTIFF AND THE PROPOSED CLASS

129.    Defendants knew that consumers such as Plaintiff and the proposed Class would be the end purchasers of the Baby Foods and the target of their advertising and statements.

130.    Defendants intended that the warranties, advertising, labeling, statements, and representations would be considered by the end purchasers of the Baby Foods, including Plaintiff and the proposed Class.

131.    Defendants directly marketed to Plaintiff and the proposed Class through statements on their website, labeling, advertising, and packaging.

---

[48]    Healthy Babies Bright Futures report, What's in My Baby's Food, https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (last accessed March 10, 2021).

132.    Plaintiff and the proposed Class are the intended beneficiaries of the expressed and implied warranties.

## CLASS ACTION ALLEGATIONS

133.    Plaintiff brings this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who, from February 5, 2015, to the present, purchased the Baby Foods for household or business use, and not for resale (the "Class").

134.    Plaintiff Ellison brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who are citizens of the State of Oregon who, from February 5, 2015, to the present purchased the Baby Foods for household or business use, and not for resale (the "Oregon Subclass").

135.    Excluded from the Class and Subclass (collectively, "Classes") are the Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

136.    This action is brought and may be properly maintained as a class action.  There is a well-defined community of interests in this litigation and the members of the Classes are easily ascertainable.

137.    The members in the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Classes in a single action will provide substantial benefits to the parties and Court.

138.    Questions of law and fact common to Plaintiff and the Classes include, but are not limited to, the following:

(a)    whether Defendants owed a duty of care;

(b)    whether Defendants knew or should have known that the Baby Foods contained or may contain Heavy Metals;

1    (c)    whether Defendants knew or should have known the Baby Foods contained

2    or may contain perchlorate;

3    (d)    whether Defendants represented and continue to represent that the Baby

4    Foods are healthy, nutritious, organic, made from the best ingredients, and safe for consumption

5    (by infants);

6    (e)    whether Defendants represented and continue to represent that the

7    manufacturing of their Baby Foods are subjected to rigorous quality standards;

8    (f)    whether Defendants represented and continue to represent the Baby Foods

9    as organic;

10    (g)    whether Defendants failed to disclose that the Baby Foods contained or may

11    contain Heavy Metals;

12    (h)    whether Defendants failed to disclose that the Baby Foods contained or may

13    contain perchlorate;

14    (i)    whether Defendants' representations in advertising, warranties, packaging,

15    and/or labeling are false, deceptive, and misleading;

16    (j)    whether those representations are likely to deceive a reasonable consumer;

17    (k)    whether Defendants had knowledge that those representations were false,

18    deceptive, and misleading;

19    (l)    whether Defendants continue to disseminate those representations despite

20    knowledge that the representations are false, deceptive, and misleading;

21    (m)    whether a representation that a product is healthy, nutritious, organic, made

22    from the best ingredients, and safe for consumption and does not contain Heavy Metals,

23    perchlorate, or other undesirable toxins or contaminants is material to a reasonable consumer;

24    (n)    whether Defendants' Marketing of the Baby Foods are likely to mislead,

25    deceive, confuse, or confound consumers acting reasonably;

26    (o)    whether Defendants violated the laws of the State of California;

27    (p)    whether Defendants violated the laws of the State of Oregon;

28    (q)    whether Defendants breached their express warranties;

CLASS ACTION COMPLAINT

1    (r)  whether Defendants breached their implied warranties;

2    (s)  whether Defendants engaged in unfair trade practices;

3    (t)  whether Defendants engaged in false advertising;

4    (u)  whether Defendants' conduct was negligent per se;

5    (v)  whether Defendants made negligent and/or fraudulent misrepresentations

6 and/or omissions;

7    (w)  whether Plaintiff and members of the Class are entitled to actual, statutory,

8 and punitive damages; and

9    (x)  whether Plaintiff and the members of the Class are entitled to declaratory

10 and injunctive relief.

11  139.  Defendants engaged in a common course of conduct giving rise to the legal rights

12 sought to be enforced by Plaintiff individually and on behalf of the other members of the Classes.

13 Identical statutory violations and business practices and harms are involved.  Individual questions,

14 if any, are not prevalent in comparison to the numerous common questions that dominate this

15 action.

16  140.  Plaintiff's claims are typical of those of the members of the Classes in that they are

17 based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

18  141.  Plaintiff will fairly and adequately represent and protect the interests of the Classes,

19 has no interests incompatible with the interests of the Classes, and has retained counsel competent

20 and experienced in class action, consumer protection, and false advertising litigation.

21  142.  Class treatment is superior to other options for resolution of the controversy

22 because the relief sought for each member of the Classes is small such that, absent representative

23 litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

24  143.  Questions of law and fact common to the Classes predominate over any questions

25 affecting only individual members of the Classes.

26  144.  As a result of the foregoing, class treatment is appropriate.

27

28

CLASS ACTION COMPLAINT

1

2

**COUNT I**
**(Negligent Misrepresentation Against Defendants on Behalf of the Class**
**or, Alternatively, the Oregon Subclass)**

3

4

145.    Plaintiff incorporates by reference and reallege each and every allegation contained

5

above, as though fully set forth herein.

6

146.    Plaintiff reasonably placed her trust and reliance in Defendants' representations that

7

the Baby Foods were as marketed to her and the Class, and were healthy, nutritious, organic, made

8

from the best ingredients, and safe for consumption, and did not contain Heavy Metals,

9

perchlorate, or other undesirable toxins or contaminants.

10

147.    Because of the relationship between the parties, Defendants owed Plaintiff and the

11

Class a duty to use reasonable care in the formulation, testing, manufacturing, marketing,

12

distribution, and sale of the Baby Foods, and to impart correct and reliable disclosures concerning

13

the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby

14

Foods or, based upon their superior knowledge, having spoken, to say enough to not be misleading.

15

148.    Defendants breached their duty to Plaintiff and the Class by formulating, testing,

16

manufacturing, advertising, marketing, distributing, and selling products to Plaintiff and the Class

17

that did not have the ingredients, qualities, characteristics, and suitability for consumption as

18

marketed by Defendants and by providing false, misleading, and/or deceptive information

19

regarding the nature of the Baby Foods.

20

149.    Defendants knew or should have known the ingredients, qualities, and

21

characteristics of the Baby Foods were not as advertised or suitable for their intended use

22

(consumption by infants) and were otherwise not as warranted and represented.

23

150.    Plaintiff and the Class reasonably and justifiably relied upon the information

24

supplied to them by the Defendants.  A reasonable consumer would have relied on Defendants'

25

warranties, statements, representations, advertising, packaging, labeling, and other marketing as

26

to the quality, make-up, and included ingredients of the Baby Foods.

27

151.    As a direct and proximate result of Defendants' misrepresentations, Plaintiff and

28

the Class suffered actual damages in that they purchased the Baby Foods that were worth less than

the price paid and that they would not have purchased at all had they known they contained or may contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants that do not conform to the products' labels, packaging, advertising, and statements.

152.    Defendants failed to use reasonable care in their communications and representations to Plaintiff and the Class, especially in light of their knowledge of the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods and the importance consumers place on ingredients when deciding whether to purchase products such as the Baby Foods.

153.    By virtue of Defendants' negligent misrepresentations, Plaintiff and the Class have been damaged in an amount to be proven at trial or alternatively, seek rescission and disgorgement under this Count.

## COUNT II
**(Violations of California's Consumer Legal Remedies Act, California Civil Code §§1750, *Et Seq.*, Against Defendants on Behalf of the Class)**

154.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

155.    Plaintiff and each proposed Class member is a "consumer," as that term is defined in California Civil Code section 1761(d).

156.    The Baby Foods are "goods," as that term is defined in California Civil Code section 1761(a).

157.    Defendants are a "person" as that term is defined in California Civil Code section 1761(c).

158.    Plaintiff's and each proposed Class member's purchase of Defendants' products constituted a "transaction" as that term is defined in California Civil Code section 1761(e).

159.    Defendants' conduct alleged herein violates the following provisions of California's Consumer Legal Remedies Act (the "CLRA"):

(a)    California Civil Code section 1770(a)(5), by negligently, recklessly, and/or intentionally representing that the Baby Foods are healthy, nutritious, organic, made from the best

CLASS ACTION COMPLAINT

ingredients, and safe for consumption, and by failing to make any mention of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods;

> (b)   California Civil Code section 1770(a)(7), by negligently, recklessly, and/or intentionally representing that the Baby Foods were of a particular standard, quality, or grade, when they were of another;

> (c)   California Civil Code section 1770(a)(9), by negligently, recklessly, and/or intentionally advertising the Baby Foods with intent not to sell them as advertised; and

> (d)   California Civil Code section 1770(a)(16), by representing that the Baby Foods have been supplied in accordance with previous representations when they have not.

160.   As a direct and proximate result of these violations, Plaintiff and the Class have been harmed, and that harm will continue unless Defendants are enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Baby Foods.

161.   Plaintiff seeks an award of attorneys' fees pursuant to, *inter alia*, California Civil Code section 1780(e) and California Code of Civil Procedure section 1021.5.

## COUNT III
**(Violations of California False Advertising Law, California Business & Professions Code §§17500, *Et Seq.*, Against Defendants on Behalf of the Class)**

162.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

163.   California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

164.   As set forth herein, Defendants' claims that the Baby Foods are healthy, nutritious, organic, made from the best ingredients, and safe for consumption are literally false and likely to deceive the public.

165.   Defendants' claims that the Baby Foods are healthy, nutritious, organic, made from the best ingredients, and safe for consumption are untrue or misleading, as is failing to mention

CLASS ACTION COMPLAINT

1    the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby

2    Foods.

3        166.    Defendants knew, or reasonably should have known, that all these claims were

4    untrue or misleading.

5        167.    Defendants' conduct is ongoing and continuing, such that prospective injunctive

6    relief is necessary, especially given Plaintiff's desire to purchase these products in the future if they

7    can be assured that, so long as the Baby Foods are as advertised: healthy, nutritious, organic, made

8    from the best ingredients, and safe for consumption, and do not contain Heavy Metals, perchlorate,

9    or other undesirable toxins or contaminants.

10       168.    Plaintiff and members of the Class are entitled to injunctive and equitable relief,

11   and restitution in the amount they spent on the Baby Foods.

12

**COUNT IV**

13

**(Violations of the Unfair Competition Law, California Business & Professions Code §§17200, *Et Seq.*, Against Defendants on Behalf of the Class)**

14       169.    Plaintiff incorporates by reference and realleges each and every allegation

15   contained above, as though fully set forth herein.

16       170.    The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business

17   act or practice."  Cal. Bus. & Prof. Code §17200.

18   **Fraudulent**

19       171.    Defendants' statements that the Baby Foods are healthy, nutritious, organic, made

20   from the best ingredients, and safe for consumption are literally false and likely to deceive the

21   public, as is Defendants' failing to make any mention of Heavy Metals, perchlorate, or other

22   undesirable toxins or contaminants in the Baby Foods.

23   **Unlawful**

24       172.    As alleged herein, Defendants have advertised the Baby Foods with false or

25   misleading claims, such that Defendants' actions as alleged herein violate at least the following

26   laws:

27       • The CLRA, California Business & Professions Code sections 1750, *et seq.*; and

28

1         •    The False Advertising Law, California Business & Professions Code sections

2  17500, *et seq.*

3 **Unfair**

4       173.   Defendants' conduct with respect to the labeling, packaging, advertising,

5 marketing, and sale of the Baby Foods is unfair because Defendants' conduct was immoral,

6 unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if

7 any, does not outweigh the gravity of the harm to their victims.

8       174.   Defendants' conduct with respect to the labeling, packaging, advertising,

9 marketing, and sale of the Baby Foods is also unfair because it violates public policy as declared

10 by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the

11 False Advertising Law and the CLRA.

12       175.   Defendants' conduct with respect to the labeling, packaging, advertising,

13 marketing, and sale of the Baby Foods is also unfair because the consumer injury is substantial,

14 not outweighed by benefits to consumers or competition, and not one consumers themselves can

15 reasonably avoid.

16       176.   In accordance with California Business & Professions Code section 17203, Plaintiff

17 seeks an order enjoining Defendants from continuing to conduct business through fraudulent or

18 unlawful acts and practices and to commence a corrective advertising campaign.  Defendants'

19 conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

20       177.   On behalf of herself and the Class, Plaintiff also seeks an order for the restitution

21 of all monies from the sale the Baby Foods, which were unjustly acquired through acts of

22 fraudulent, unfair, or unlawful competition.

23 **<u>COUNT V</u>**

24 **(Breach of Express Warranty Against Defendants on Behalf of the Class, or
Alternatively, the Oregon Subclass)**

25       178.   Plaintiff incorporates by reference and realleges each and every allegation

26 contained above, as though fully set forth herein.

27

28

179.    Defendants marketed and sold the Baby Foods into the stream of commerce with the intent that the Baby Foods would be purchased by Plaintiff and the Class.

180.    As set forth herein, Defendants made express representations to Plaintiff and the Class that the Baby Foods were healthy, nutritious, organic, made from the best ingredients, and safe for consumption.

181.    Defendants made these express warranties regarding the Baby Foods' quality, ingredients, and fitness for consumption in writing through their website, advertisements, and marketing materials and on the Baby Foods' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiff and the Class entered into upon purchasing the Baby Foods.

182.    Defendants' advertisements, warranties, and representations were made in connection with the sale of the Baby Foods to Plaintiff and the Class. Plaintiff and the Class relied on Defendants' advertisements, warranties, and representations regarding the Baby Foods in deciding whether to purchase Defendants' products.  Such promises became part of the basis of the bargain between the parties, and thus constituted express warranties.

183.    On the basis of these express warranties, Defendants sold to Plaintiff and the Class members the Baby Foods.

184.    Defendants knowingly breached the express warranties by including Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods.

185.    Defendants were on notice of this breach as they were aware of the included Heavy Metals in the Baby Foods, and based on the public investigation by the nonprofit organization, Healthy Babies Bright Futures, that showed their baby food products as containing Heavy Metals and/or perchlorate.

186.    Privity exists because Defendants expressly warranted to Plaintiff and the Class that the Baby Foods were healthy, nutritious, organic, made from the best ingredients, and safe for consumption, and by failing to make any mention of Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

187.     Plaintiff and the Class members reasonably relied on the express warranties by Defendants.

188.     As a direct and proximate result of Defendants' breach of their express warranties, Plaintiff and the Class sustained damages as they purchased the Baby Foods that were worth less than the price paid and they would not have purchased at all had they known the Baby Foods contained or may contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants that do not conform to the products' labels, packaging, advertising, and statements.

189.     Plaintiff, on behalf of herself and the Class, seeks actual damages for Defendants' failure to deliver goods that conform to their express warranty and resulting breach.

## COUNT VI
**(Breach of Implied Warranty of Merchantability Against Defendants on Behalf of the Class or, Alternatively, the Oregon Subclass)**

190.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

191.     Defendants are a merchant engaging in the sale of goods to Plaintiff and the Class members.

192.     There was a sale of goods from Defendants to Plaintiff and the Class members.

193.     As set forth herein, Defendants manufactured and sold the Baby Foods, and prior to the time the Baby Foods were purchased by Plaintiff and the Class, impliedly warranted that the Baby Foods were of merchantable quality, fit for their ordinary use (consumption by infants), and conformed to the promises and affirmations of fact made on the Baby Foods' labels and packaging, including that the food was healthy, nutritious, organic, made from the best ingredients, and appropriate for human infant consumption.

194.     Plaintiff and the Class relied on Defendants' promises and affirmations of fact when they purchased the Baby Foods.

195.     The Baby Foods were not fit for their ordinary use (consumption by infants) and did not conform to Defendants' affirmations and promises as they contained or may contain Heavy

CLASS ACTION COMPLAINT

Metals, perchlorate, or other undesirable toxins or contaminants that do not conform to the packaging or labels.

196.    These promises became part of the basis of the bargain between the parties and thus constituted implied warranties.

197.    Defendants breached the implied warranties by selling the Baby Foods that failed to conform to the promises or affirmations of fact made on the packaging or labels as each product contained Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

198.    Defendants were on notice of this breach as they were aware of the inclusion of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods, and based on the public investigation by the nonprofit organization, Healthy Babies Bright Futures, that showed their baby food products as containing Heavy Metals and/or perchlorate.

199.    Privity exists because Defendants impliedly warranted to Plaintiff and the Class members through the warranting, packaging, advertising, marketing, and labeling that the Baby Foods were healthy, nutritious, organic, made from the best ingredients, and safe for consumption and by failing to make any mention of Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

200.    As a direct and proximate result of Defendant's breach of their implied warranties, Plaintiff and the Class suffered actual damages as they purchased the Baby Foods that were worth less than the price paid and that they would not have purchased at all had they known of the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

201.    Plaintiff, on behalf of herself and the Class, seeks actual damages for Defendant's failure to deliver goods that conform to their implied warranties and resulting breach.

### COUNT VII
### (Unjust Enrichment Against Defendants on Behalf of the Class or, Alternatively, the Oregon Subclass)

202.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

203.     Substantial benefits have been conferred on Defendants by Plaintiff and the Class through the purchase of the Baby Foods. Defendants knowingly and willingly accepted and enjoyed these benefits.

204.     Defendants either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Baby Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendants. As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances.

205.     Defendants' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiff and the Class.

206.     Plaintiff and the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

207.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT VIII**
**(Fraudulent Misrepresentation Against Defendants on Behalf of the Class or,**
**Alternatively, the Oregon Subclass)**

208.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

209.     Defendants falsely represented to Plaintiff and the Class that their Baby Foods were healthy, nutritious, organic, made from the best ingredients, and safe for consumption.

210.     Defendants intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiff and the Class to purchase their Baby Foods.

211.     Defendants knew their representations about the Baby Foods were false in that the Baby Foods contained or may contain, levels of Heavy Metals, perchlorate, or other undesirable toxins or contaminants that do not conform to the products' labels, packaging, advertising, and

statements. Defendants allowed their packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the Class.

212.   Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Baby Foods to their detriment. Given the deceptive manner in which Defendants advertised, represented, and otherwise promoted the Baby Foods, Plaintiff's and the Class's reliance on Defendants' misrepresentations was justifiable.

213.   As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known the Baby Foods contained or may contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants that do not conform to the products' labels, packaging, advertising, and statements.

214.   Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT XV
### (Fraud by Omission Against Defendants on Behalf of the Class or, Alternatively, the Oregon Subclass)

215.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

216.   Defendants concealed from and failed to disclose to Plaintiff and the Class that their Baby Foods contained or may contain, Heavy Metals, perchlorate, or other undesirable toxins or contaminants that do not conform to the products' labels, packaging, advertising, and statements.

217.   Defendants were under a duty to disclose to Plaintiff and the Class the true quality, characteristics, ingredients and suitability of the Baby Foods because: (1) Defendants were in a superior position to know the true state of facts about their products; (2) Defendants were in a superior position to know the actual ingredients, characteristics, and suitability of the Baby Foods for consumption by infants; and (3) Defendants knew that Plaintiff and the Class could not reasonably have been expected to learn or discover that the Baby Foods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Baby Foods.

218.   The facts concealed or not disclosed by Defendants to Plaintiff and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Baby Foods.

219.   Plaintiff and the Class justifiably relied on Defendants' omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Baby Foods, which is inferior when compared to how the Baby Foods are advertised and represented by Defendants.

220.   As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known Baby Foods contained or may contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants that do not conform to the products' labels, packaging, advertising, and statements.

221.   Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against the Defendants as to each and every count, including:

A.   An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

B.   An order enjoining Defendants from selling the Baby Foods until the higher and/or unsafe levels of Heavy Metals are removed or full disclosure of the presence of such appears on all labels, packaging, and advertising;

C.   An order enjoining Defendants from selling the Baby Foods in any manner suggesting or implying that they are healthy, nutritious, and safe for consumption;

D.   An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

CLASS ACTION COMPLAINT

E.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

F.      An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

G.      An order requiring Defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.      An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein;

I.      An order requiring Defendants to pay punitive damages on any count so allowable;

J.      An order awarding attorneys' fees and costs to Plaintiff and the Class; and

K.      An order providing for all other such equitable relief as may be just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  March 23, 2021

BARRACK RODOS & BACINE
STEPHEN R. BASSER (121590)
SAMUEL M. WARD (216562)


By:  s/  STEPHEN R . BASSER


One America Plaza
600 West Broadway, Suite 900
San Diego, CA  92101

1

Telephone: (619) 230-0800
Facsimile: (619) 230-1874
2
E-mail: sbasser@barrack.com
sward@barrack.com
3

4

EMERSON FIRM, PLLC
JOHN G. EMERSON (TX Bar No. 06602600)
5
2500 Wilcrest, Suite 300
Houston, TX 77042
6
Telephone: (800)-551-8649
Fax: (501)-286-4659
7
jemerson@emersonfirm.com
8

9
*Attorneys for Plaintiff Autumn Ellison*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT